# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

BRIAN THOMA,

                Petitioner,            :      Case No. 1:20-cv-282

    - vs -                                      District Judge Timothy S. Black
                                              Magistrate Judge Michael R. Merz

WARDEN,
  Pickaway Correctional Institution,

                                       :

                Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought by Petitioner Thoma with the assistance of counsel, is before the Court for decision on the merits. Relevant filings are the Petition (ECF No. 1), the State Court Record (ECF No. 9), the Return of Writ (ECF No. 10), and Petitioner's Reply (ECF No. 15).

The Magistrate Judge reference in the case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the District. Final decision of the case remains with District Judge Black.

**Litigation History**

The March 2016 term of the Warren County Grand Jury indicted Thoma on eight counts of sexual battery in violation of Ohio Revised Code § 2907.03(A)(5) (Counts 1, 2, 4, 6, 8, 10, 12, & 14) and seven counts of gross sexual imposition in violation of Ohio Revised Code §

2907.05(A)(5) (Counts 3, 5, 7, 9, 11, 13, & 15). (Indictment, State Court Record, ECF No. 9, PageID 51-57.) The alleged victim on each count was his fifteen-year-old adopted daughter, H.T. Thoma waived his right to jury trial and the case was tried to the bench. After he was convicted on all counts, the trial court merged the sexual battery and gross sexual imposition charges and sentenced Thoma to forty-two months on each count, to be served consecutively for a total of 336 months.

Thoma appealed to the Ohio Twelfth District Court of Appeals which affirmed the conviction, but remanded for resentencing. *State v. B.J.T.,* 2017-Ohio-8797 (Ohio App. 12th Dist. Dec. 4, 2017), appellate jurisdiction declined, 152 Ohio St. 3d 1464 (2018). On remand he received the same sentence which was then affirmed on appeal, *State v. B.J.T.,* 2018-Ohio-4720 (Ohio App. 12the Dist. Nov. 26, 2018), appellate jurisdiction declined, 2019-Ohio-944 (2019).

On February 15, 2018, Thoma filed through counsel a petition for post-conviction relief under Ohio Revised Code § 2953.21. The trial court denied relief (Order, State Court Record, ECF No. 9, Ex. 30). The court of appeals again affirmed. *State v. B.J.T.,* 2019-Ohio-1049 (12th Dist. Mar. 25, 2019), appellate jurisdiction declined, 2019-Ohio-2982 (2019).

Thoma then filed the instant Petition, pleading the following grounds for relief:

> **Ground One:** Trial counsel committed ineffective assistance of counsel at trial in violation of the Sixth Amendment right to counsel.
>
> **Supporting Facts:** Trial counsel failed to present exculpatory witnesses and evidence in support of the defense.
>
> **Ground Two:** Trial counsel committed ineffective assistance of counsel in plea bargaining in violation of the Sixth Amendment right to counsel.
>
> **Supporting Facts:** Trial counsel failed to effectively negotiate in plea bargaining and to communicate with Thoma about his plea options.

2

**Ground Three:** Thoma's sentence was disproportionate in violation of the Eighth Amendment.

**Supporting Facts:** Thoma was sentenced disproportionately to similarly situated offenders convicted of similar crimes.

**Ground Four:** Thoma's convictions were against the manifest weight of evidence and supported by insufficient evidence in violation of the Fourteenth Amendment.

**Supporting Facts:** Weighing evidence as a whole, there was insufficient evidence to support the required elements of penetration, sexual conduct, and sexual gratification.

(Petition, ECF No. 1.)

# Analysis

**Ground One:  Ineffective Assistance of Counsel**

In his First Ground for Relief, Thoma claims he received ineffective assistance of trial counsel when his attorney did not present exculpatory witnesses.  Respondent defends this Ground for Relief on the merits, asserting that the Twelfth District's rejection of the claim is entitled to deference (Return, ECF No. 10, PageID 867-71).

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the

> defendant of a fair trial, a trial whose result is reliable. Unless a
> defendant makes both showings, it cannot be said that the conviction
> or death sentence resulted from a breakdown in the adversary
> process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both

deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing

*Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly
> deferential. . . . A fair assessment of attorney performance requires
> that every effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of counsel's challenged
> conduct, and to evaluate the conduct from counsel's perspective at
> the time. Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption that counsel's
> conduct falls within a wide range of reasonable professional
> assistance; that is, the defendant must overcome the presumption
> that, under the circumstances, the challenged action "might be
> considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to overcome

confidence in the outcome." 466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168, 184

(1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing

*Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*,

466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable."

*Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S.

86, 111-12 (2011).

4

> In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland,* 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

**Uncalled Lay Witnesses**

In his Reply, in support of his First Ground for Relief, Thoma summarizes the evidence he believes should have been presented from a number of uncalled lay witnesses as follows:

> Numerous witnesses were available to testify on Thoma's behalf at trial to dispute the characterization of him as a violent person. See D. Thoma Aff. ¶ 8; Sue Thoma Aff. ¶ 13; J. Logan Aff. ¶ 8; M. Carrancejie Aff. ¶¶ 14-15 PAGEID 323-35. These witnesses frequently observed Thoma's interactions with H.T. and H.T.'s behavior around her father during the time he was supposedly digitally penetrating her on a weekly basis. According to the witnesses, Thoma was not violent, to the point of not fighting back when Wendy was physically aggressive towards him. See M. Carrancejie Aff. ¶ 10 PAGEID 332. In addition, H.T. had a close, warm, and loving relationship with her father and did not seem afraid of him in any way. See id. at ¶¶ 4, 5, 11; D. Thoma Aff. ¶¶ 5, 7; J. Logan Aff. ¶ 6 PAGEID 329-30, 331-2, 335.

> For example, shortly before Thoma was arrested, Thoma's sister Michelle Carrancejie and her family visited the Thoma['s]. See M. Carrancejie Aff. ¶ 3 PAGEID 331. During the trip, H.T. was

laughing and cutting up with her dad, was sitting close by him, and asked for his help in learning to drive. *Id.* at ¶ 3 PAGEID 331. H.T. voluntarily went alone with Thoma in his vehicle to practice driving. *Id.* at ¶¶ 4-5 PAGEID 331.

In addition, either one or two nights before Thoma was arrested, he and H.T. visited his Uncle Doug, who lived about 10 minutes away. See D. Thoma Aff. ¶¶ 4, 7 PAGEID 329-30. There were a lot of people in the living room, and Thoma was sitting on the couch with his legs slightly spread. Id. at ¶ 7 PAGEID 330. H.T. voluntarily sat on her dad's knee and put her arm around him. Id. The night before Thoma was arrested, H.T. told Thoma's friend what a great dad he is and how appreciative she was of him teaching her how to drive. See J. Logan Aff. ¶¶ 3-4 PAGEID 334. And. H.T. reported that she was much more afraid of her mother than her father, and that no one was afraid of her father. See Sue Thoma Aff. ¶ 8 PAGEID 326. These are hardly the words and actions of a child who was afraid of her father or feared for her life.

In addition, numerous family members were present in H.T.'s life from whom she could have asked for help. H.T. went driving alone with her grandmother, had an uncle who lived only 10 minutes away, and an aunt who visited while H.T. was allegedly being sexually abused. See id. at ¶¶ 3, 6; Sue Thoma Aff. ¶ 9; D. Thoma Aff. ¶ 4. PAGEID 323-35. Any of these adults would have helped her, but she said nothing and did not seek help.

In addition, numerous witnesses were available to testify that Wendy has a severe alcohol problem and frequently becomes intoxicated and angry. See Sue Thoma Aff. ¶ 5 PAGEID 326 (describing incident in which Wendy drank so much that she couldn't get up off the floor); J. Logan Aff. ¶ 7 PAGEID 335 (describing incident in which Wendy became drunk and verbally abusive); M. Cararncejie Aff. ¶¶ 7-9 PAGEID 332 (describing incident shortly before Thoma's arrest where Wendy was consuming heavy alcoholic drinks). Wendy also told Thoma's mother the day after he was arrested that she was going to "make this so much worse than it was" for Brian. *Id.* at ¶ 10 PAGEID 332. Had this testimony been presented at trial, it would have undercut Wendy's credibility and ability to report reliable observations and would also have demonstrated that she had a reason to encourage her daughter to exaggerate the allegations against Thoma. This testimony would have been particularly important, given that H.T. did not report allegations regarding a knife during her first extensive interview with police, but only later added a knife to her statement

6

> after her mother, who she was afraid of, took her on an expensive
> shopping trip.

(ECF No. 15, PageID 902-04).

The incidents in suit occurred from September 2015 to April of 2016; the trial occurred in

October 2016.  The testimony these witnesses were assertedly prepared to give at trial was offered

to by way of affidavits attached to the post-conviction petition filed January 18, 2018, almost two

years after the crimes.  They are summarized as follows:

> **Affidavit of Petitioner:**  I asked my attorney through my mother to
> get me a polygraph examination.  The attorney advised against it
> because the results would be inadmissible.
>
> **Affidavit of Deborah "Sue" Thoma**, Petitioner's mother:
> Although H.T. is adopted, we always treated her as family.  Wendy,
> Brian's spouse, has a serious alcohol problem.  Sue lives in Florida
> but visits regularly.  The last time she did so was on Easter before
> Brian was arrested.[1]  During the trip she found H.T.'s relationship
> with Brian to be positive.  When she returned to Ohio after Brian's
> arrest, Wendy did not want to see her.
>
> **Affidavit of Doug Thoma, Brian's uncle**:  He lived nearby and saw
> Brian and his family about twice a month.  H.T.'s relationship with
> Brian was "very good, warm, and loving."  Within forty-eight hours
> before Brian's arrest, he and his family were at Doug's home.
> During the visit, H.T. went and sat on her father's lap.
>
> **Affidavit of Michelle Carrancejie, Brian's sister:**  About a month
> before Brian's arrest, she, her family, and her mom came to Ohio to
> visit for nine days.[2]  During the trip, H.T. seemed to be "a complete
> happy and normal teenage girl"  who would sit with her dad and go
> places with him alone.  H.T. could have approached her or Doug or
> "Sue" for help, but did not.  Wendy had a great deal of alcohol in
> the house.  Brian is not a violent person.  His relationship with H.T.
> "always seemed close and loving."  The same day that H.T. reported
> the crimes to the police, "Wendy went immediately to the bank and
> withdrew a lot of money from hers and Brian's account. She and
> [H.T.] went shopping at the outlet mall." She said this could be

---

[1] No date is given, but the Court takes judicial notice that Easter in 2016 was March 27 in the Roman calendar which is typically followed in the United States.  That would put the visit in the midst of the period of abuse.
[2] She describes the trip as coinciding with her daughter's spring break.  This is consistent with her mother's placing the trip at Easter.

confirmed by bank statements and she would never go shopping with her daughter if her daughter revealed abuse like this.  She talked with trial counsel and would have testified to these facts if called.

**Affidavit of James H. Logan II.**  He is a lifelong friend of Brian, whose mother was friends with Brian's mother before they were born.  Shortly before Brian's arrest, H.T. told him how much she appreciated her dad's teaching her to drive.  When Brian and his family visited the Logans in Florida several months before Brian's arrest, H.T. "acted like a completely normal teenager" who had a "normal, loving, father-daughter relationship."  Wendy tended to drink too much.

(Attachments to Post-Conviction Petition, ECF No. 9, PageID 323-35).

The Twelfth District Court of Appeals considered the proffered affidavits on appeal[3] from the trial court's denial of post-conviction relief and concluded:

[*P13]  Appellant argues that his attorney failed to present the testimony of several witnesses who he believes would have helped to "undercut the narrative" told by the victim and her mother during trial. In attempting to substantiate his claim, appellant submitted affidavits from witnesses who averred that appellant had a positive relationship with the victim. Appellant also seeks to diminish the credibility of the victim's mother by claiming that she is an erratic alcoholic. Furthermore, appellant submitted bank statements, which appellant argues, shows that the victim's mother took the victim on "an expensive shopping spree" after she reported the sexual encounters.

[*P16]  Following review, we find the trial court did not err by denying appellant's petition for postconviction relief. Appellant's arguments are entirely speculative and amount to nothing more than an attempt to relitigate this matter utilizing a different trial strategy.

[*P17]  As to the failure to call certain witnesses regarding appellant's relationship with the victim and the victim's mother, we note that a decision regarding whether or not to call witnesses falls within the ambit of trial strategy. *State v. Robinson*, 12th Dist. Butler No. CA2014-12-256, 2015-Ohio-4649, ¶ 51. In this case, appellant fails to establish either prong of his ineffective assistance claim. There is little probative value to any evidence that appellant once shared a strong relationship with the victim, as the issue at trial was

---

[3] The trial court had rejected the post-conviction claims on the basis of Ohio criminal *res judicata* doctrine, but the Twelfth District considered the proffered evidence on the merits.  State v. B.J.T., 2019-Ohio-1049, ¶ 12.

whether appellant had sexually abused her, a fact that appellant did not dispute during interviews with law enforcement. Furthermore, we decline to find ineffective assistance of counsel for appellant's attempt in this appeal to diminish the credibility of the victim's mother.

*State v. B.J.T.*, 2019-Ohio-1049.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court such as the ineffective assistance of trial counsel claim presented in the First Ground for Relief, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

In deciding Thoma's ineffective assistance of trial counsel claim, the Twelfth District held that "[i]n a postconviction petition asserting ineffective assistance of counsel, the petitioner must first show that "his trial counsel's performance was deficient; and second, that the deficient performance prejudiced the defense to the point of depriving the appellant of a fair trial." *State v. B.J.T.,* 2019-Ohio-1049, ¶ 15, citing its own precedent *State v. Widmer,* 12th Dist. Warren CA2012-02-008, 2013-Ohio-62, ¶ 132, which in turn relies on the controlling Supreme Court precedent, *Strickland v. Washington,* 466 U.S. 668 (1984). Thus Thoma's burden in habeas is to show that the Twelfth District's decision is an unreasonable application of *Strickland* or an unreasonable determination of the facts on the basis of the evidence presented.

As to the uncalled lay witnesses, the Magistrate Judge agrees with the Twelfth District's

assessment of the probative value of their proffered testimony. The issue at trial was whether Thoma digitally penetrated his daughter. Whether they had had in the past, even the relatively recent past, an apparently warm relationship does not speak to that critical issue. None of the proffered witnesses suggested any motive for H.T. to lie about her father's conduct. Nor do they offer, for example, alibi-type testimony that Thoma was not in the house with H.T. when she testified the abuse happened. None of them contradicted H.T.'s trial testimony with any proof she had made a prior inconsistent statement. And except for life-long friend Logan, they are all relatives of Petitioner.

Wendy Thoma testified she first learned of H.T.'s allegations from a police officer on April 21, 2016; H.T. herself did not tell her mother about the abuse that day (Trial Transcript, State Court Record, ECF No. 9-1, PageID 553). Wendy testified that when she next talked to Thoma, he asked for her to put money in an account so that he could bail himself out. She refused and said she would not do anything to help him. *Id.* at PageID 555-56. She testified that she had possession of Thoma's cellphone, read text messages recorded on it between H.T. and Thoma, and then turned it over to the police. *Id.* at 556-57.

Wendy Thoma's actual testimony would hardly have been undermined by proof that she had a drinking problem. Presumably if she had been drunk on the witness stand, the trial judge would have dealt with it summarily. None of the witness affidavits suggest any motive she might have had to encourage H.T. to fabricate the incidents or any observed occasion when her drinking impaired her memory. Nor do they suggest any animosity between Wendy and Brian, who had been married for ten years at the time of the incidents[4], before she learned of the abuse. If Petitioner is suggesting that Wendy encouraged H.T. to fabricate the abuse and then lie about it,

---

[4] The Reply refers to Wendy as Brian's "ex-wife," (ECF No. 15, PageID 900), but they were still married on April 21, 2016, and none of the trial testimony or tendered post-trial affidavits speak of any marital discord prior to that date.

the Magistrate Judge believes it is significant that H.T. testified she told other people at school first instead of her mother, at least as to any claim that H.T. fabricated the abuse at Wendy's instance.

Thoma makes much of his sister's statement in her affidavit that Wendy withdrew a large amount of money from a joint account she had with Brian on April 21, 2016. Michelle Carrancejie offers no evidentiary foundation for this testimony. Indeed, Thoma's counsel exaggerates even what Carrancejie swore to. Thousands of dollars withdrawn from an account does not equate to thousands of dollars spent on clothes for H.T. The withdrawal is perfectly consistent with Wendy's testimony she would do nothing to help Thoma bail out. And the Reply suggests the inference that Wendy took H.T. shopping to reward her for lying to the police. However, the conduct is completely consistent with a mother's effort to comfort a daughter whom she has just learned was sexually abused by her father repeatedly over a six-month period.

On balance, the Twelfth District's characterization of the conclusions Thoma argued from the affidavits as "speculative" seems accurate or, at the very least, within the range of appropriate judicial evaluation of evidence.

**Failure to Elicit Medical Testimony**

On the same day she told police about the abuse, H.T. had a sexual assault examination at Dayton Children's Hospital which the Court understands to be common police practice when a person alleges she has been the victim of sexual misconduct. The examination allegedly "revealed no evidence of scraping, bleeding, scarring, or other vaginal damage." (Reply, ECF No. 15, PageID 901, citing State Court Record, Trial Tr., ECF No. 9-1, PageID 567 where State's Exhibit 1 was

identified.) The purportedly quoted language does not appear in the record at the cited location. In any event, the Twelfth District found that the examination revealed no abnormalities or injuries. The report was admitted in evidence, but Thoma faults his attorney for failure to subpoena the medical examiner or to "otherwise offer expert testimony to explain these findings." *Id.* at PageID 901.

The Twelfth District on direct appeal found that the medical report was not inconsistent with H.T.'s testimony:

> The fact that there were no injuries or abnormalities found during H.T.'s examination on April 21, 2016, does not mean that appellant did not penetrate H.T.'s vagina when he sexually assaulted her. It merely indicates that appellant's assault of the victim in the early morning hours of April 21, 2016, did not cause any lacerations or observable physical harm to H.T.'s vaginal area.

*State v. B.J.T.,* 2017-Ohio-897, ¶ 28. On appeal from denial of the post-conviction petition, the court of appeals held again:

> [*P18] We similarly find that appellant's trial counsel was not ineffective for failing to obtain a medical expert. It is well-established that medical testimony is not necessary to prove a sexual assault and, oftentimes, victims will have no symptoms of physical injury. See, e.g., *State v. Hall,* 12th Dist. Butler No. CA2012-01-014, 2013-Ohio-4427, ¶ 33 (the fact that a victim's medical exam was "normal" is not determinative of whether she was sexually abused). Here, the allegation is that appellant digitally penetrated the victim over a period of time. Physical injury was not required, nor would the lack of physical injury be necessarily probative in light of the allegations. As a result, appellant's counsel was not ineffective for failing to obtain a medical expert or go into further detail regarding the medical report.

*State v. B.J.T.,* 2019-Ohio-1049, ¶ 18.

Thoma's claim with respect to any uncalled medical expert is even less persuasive than his claim about the uncalled lay witnesses. What would such an expert have testified to? No proposed

medical testimony was presented with the post-conviction petition. H.T. did not claim her father

scratched her or caused her to bleed, so the absence of such evidence in the medical report would

not have contradicted her testimony. Thoma's hypothesis appears to be that a medical expert

would have testified that the absence of scarring or bleeding would prove there had been no digital

penetration, but the hypothesis is purely speculative – it is not backed up by any expert willing to

testify to that effect.

**Failure to Have a Polygraph Examination Conducted**

Both Brian and Sue Thoma aver that trial counsel was asked to have a polygraph

examination conducted; Brian avers that Mr. Ruppert said the results would be inadmissible.

Regarding the failure to have a polygraph examination conducted, the Twelfth District wrote on

post-conviction appeal:

> [*P19] Finally, appellant's counsel was not ineffective for failing
> to request a polygraph examination, as such a decision was a matter
> of reasonable trial strategy. Concerns regarding a polygraph
> examination may very well have been more pronounced in this case,
> as appellant had already made several incriminating admissions. As
> we addressed in appellant's direct appeal, the evidence to support
> appellant's convictions was overwhelming. In text messages
> exchanged with the victim, appellant begged the victim not to tell
> anyone. Appellant promised "[a]bsolutely never will I be so f******
> stupid again" and pleaded with the victim to "trust me when I tell
> you that this will never happen again." Appellant also admitted he
> made a "mistake" and touched the victim "in places she shouldn't be
> touched." Appellant admitted that he touched the victim's breasts
> and her vaginal area "skin to skin" with his hands. He stated he had
> touched the victim "maybe once a week for the last couple months,"
> with the last time being "last night." He told detectives that the
> incidents occurred in the victim's bedroom in the middle of the night
> and that he used the light on his cellphone to see. Appellant made
> additional admissions in jailhouse phone calls where he admitted to

> family members that he "touched [the victim] inappropriately" and
> that "she's not making anything up. It's not her fault."

*State v. B.J.T.,* 2019-Ohio-1049.

Thoma has made no showing that this conclusion is inconsistent with sound professional judgment in a case with recorded admissions as extensive as those here. He has also not shown generally that it was deficient performance for a defense attorney to fail to have a polygraph examination conducted in a case such as this. Finally, he has not shown what the results of a polygraph examination would have been. Thus the uncalled medical witness claim fails both the deficient performance and prejudice prongs of *Strickland*.

Thoma has not shown that the Twelfth District's decision on his claim of ineffective assistance of trial counsel is an unreasonable application of *Strickland*. It should therefore be denied on the merits.


**Ground Two:  Ineffective Assistance of Trial Counsel in Plea Negotiations**


In his Second Ground for Relief, Thoma claims he received ineffective assistance of trial counsel in plea negotiations, particularly because Mr. Ruppert did not have the hypothetically favorable results of a polygraph examination to bargain with.

Because plea negotiation is functionally such an important part of the criminal process today, the Supreme Court has explicitly held that the right to effective counsel includes the right to effective assistance of counsel in plea negotiations. *Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012). What must an attorney do to meet that obligation? The Court has held that at a minimum, counsel must convey a plea offer to his or her client. *Frye, supra.*. However, there is no evidence here that the State made an offer which Mr. Ruppert failed

to convey to Thoma.

This Report quotes above the Twelfth District's reasoning about why it was not ineffective assistance to fail to have a polygraph examination conducted.  In addition, the appellate court questioned the utility of such an examination in plea negotiations: "Moreover, appellant can present no evidence that the state would have agreed to reduced charges had he taken a polygraph examination." *State v. B.J.T.,* 2019-Ohio-1049, ¶ 20.

As noted above under the First Ground for Relief, the only evidence about the polygraph in the case is Brian and Sue Thoma's averments that he asked for one and Mr. Ruppert advised against it. The Magistrate Judge accepts those averments as true.  There is no evidence that Warren County prosecutors regularly consider favorable polygraph results in plea negotiations or that a minimum component of professional practice in criminal defense in sexual abuse cases in Ohio is to obtain such an examination.

There is also a dearth of evidence about plea negotiations at all.  Petitioner does not claim he told Mr. Ruppert he was willing to bargain or what sentence he would have accepted.  Indeed, present counsel points to nothing in the record to prove Mr. Ruppert did not attempt to negotiate. The burden of proving ineffective assistance of trial counsel for failure to plea bargain is on the Petitioner and Brian Thoma's Affidavit says nothing on the subject.

The Twelfth District's decision on ineffective assistance of trial counsel in plea negotiation is not an unreasonable application of *Strickland* and should therefore be denied.


**Ground Three:  Eighth Amendment Violation by Imposing Disproportionate Sentence**


In his Third Ground for Relief, Thoma asserts his sentence violates the Eighth Amendment

because it is disproportionate to the sentences imposed on other persons for similar offenses.

**Procedural Default**

Respondent asserts this claim is procedurally defaulted because it was never fairly presented to the Ohio courts as a federal constitutional claim (Return, ECF No. 10, PageID 856-61). Thoma responds that he "exhausted this claim in state court by presenting both the operative facts and utilizing the terminology of Eighth Amendment case law in state court." (Reply, ECF No. 14, PageID 914).

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), cert. denied, 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane*, 516 U.S. 99 (1995); *Riggins v. McMackin*, 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

There are occasions when a state court defendant will have made claims in the state courts which, while not explicitly invoking the United States Constitution, in fact fairly place before the state courts the substance, both facts and legal theory, of a claim or claims later made in habeas corpus.

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b)

> reliance on state cases employing constitutional analysis in like factual situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts well within the mainstream of constitutional litigation.

*Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987); *accord*, *Whiting v. Birt*, 395 F.3d 602 (6th Cir. 2005); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000).

Thoma asserts that he "argued to each and every state court below that a 28-year consecutive sentence was disproportionate to the sentences handed down in similar cases and against similar alleged offenders." (Reply, ECF No. 15, PageID 914).  While that statement is true on its face, it fails to grapple with the substance of the fair presentation requirement.  Rather, we must inspect the presentation in detail.

On his initial direct appeal, Thoma argued in his Third Assignment of Error that imposing consecutive rather than concurrent sentences was contrary to Ohio law and that his sentence was "disproportionate to the crime committed." (Appellant's Brief, State Court Record, ECF No. 9, PageID 70).  In the argument on this assignment of error, Thoma cited numerous Ohio cases but no federal cases; the Eighth Amendment is not mentioned.

On his direct appeal after resentencing, Thoma again asserted his sentence of twenty-eight years was disproportionate to other sentences for those crimes [sexual battery and gross sexual imposition]." (Appellant's Brief, State Court Record, ECF No. 9, PageID 207).  In support, he cited twenty-five Ohio cases and no federal cases. *Id.* at PageID 208-09.  The Eighth Amendment is again not mentioned.

In his Reply, Thoma offers no analysis to show that he relied in state court on state cases employing Eighth Amendment analysis; as noted, he cited no federal cases at all.  Nor has he shown that the pattern of facts in this case is "well within the mainstream of constitutional

litigation." Instead, he appears to rely on the use of words like "disproportionate" in both Ohio sentencing case and federal Eighth Amendment cases and claim that they mean the same thing.

The Magistrate Judge disagrees. Ohio statutory law requires sentencing judges to consider certain factors in determining the length of a sentence and whether sentences for multiple crimes should be concurrent or consecutive. Thoma argued these statutes had not been complied with, not that his sentence violated the Eighth Amendment.

Of course, Ohio law exhibits an interest in making punishments proportionate to the crime committed. For that very reason the 1974 recodification of Ohio law classified felonies and misdemeanors into various degrees commensurate with the General Assembly's sense of a rough equivalence in seriousness. It is a model of reason in its pattern compared with federal criminal law which has never been codified on the same basis.[5] Moreover, a sentence can be reversed if the sentencing court does not consider the purposes and principles of felony sentencing (Ohio Revised Code § 2929.11) or the appropriate sentencing factors (Ohio Revised Code § 2929.12), giving a statutory basis for sentence review without any reference to the Eighth Amendment.

Petitioner relies on *Clinkscale v. Carter*, 375 F.3d 430 (6th Cir. 2004), but it is clearly distinguishable. Petitioner there had explicitly raised an ineffective assistance of trial counsel claim in the state courts and had cited *Strickland* as the standard. *Id.* at 438.

Petitioner also relies on *McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000), but that case supports Respondent's position. Considering whether petitioner had fairly presented a Confrontation Clause argument to the state courts, the Sixth Circuit held:

> We are of the opinion that the petitioner did not "fairly present" his claim. In his direct appeal, the petitioner focused entirely on the applicability of Ohio's rape shield law. Ohio Rev. Code Ann. § 2907.02. He did not cite any federal precedent and his appellate brief only alleges that the trial judge's limitation on cross-examination

---

[5] As unlikely bedfellows as Ted Kennedy and Strom Thurmond once collaborated on such a project, unsuccessfully.

> denied him a "fair trial" and "due process." As this court recognized in *Franklin*, this is not sufficient to alert a state court that an appellant is asserting the violation of a specific constitutional right. While it is true that a few of the state cases cited by the petitioner on direct appeal contain references to the Confrontation Clause, the majority of those cases were concerned with Ohio evidence law. We do not think that a few brief references to the Confrontation Clause in isolated cases is enough to put state courts on notice that such a claim had been asserted. Thus, we hold that the petitioner failed to "fairly present" his Confrontation Clause claim to the Ohio courts.

228 F.3d at 682.

The Sixth Circuit has held that merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984). Merely using the word "disproportionate" fares no better. The Magistrate Judge concludes Thoma did not fairly present an Eighth Amendment claim to the Ohio courts. His Third Ground for Relief is therefore procedurally defaulted.

**Merits Analysis**

In the alternative, Thoma's Eighth Amendment claim fails on the merits. It is true that the Supreme Court has said "The concept of proportionality is central to the Eighth Amendment." (Reply, ECF No. 15, PageID 914, quoting *Graham v. Florida*, 560 U.S. 48, 59 (2010)). But the quotation bespeaks more Justice Kennedy's penchant for grandiloquence than any holding of the case.[6] In

---

[6] Compare *Lawrence v. Texas*, 539 U.S. 558 (2003), where Justice Kennedy purported to recognize a substantive due process right to engage in any private sexual conduct by consenting adults with *Lowe v. Stark County Sheriff*, 663 F.3d 258 (6th Cir. 2011), where the court upheld a conviction for incest with a consenting adult stepdaughter, saying it was unclear that *Lawrence* announced a new fundamental right or the proper standard of review to apply. Justice Kennedy's tendency to write broad generalities was the frequent subject of criticism by Justice Scalia. Lower court

determining what constitutes clearly established federal law, "we must consult 'the holdings, as opposed to the dicta, of [the Supreme] Courts' decisions as of the time of the relevant state-court decision.'" *Id.*, quoting *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005).

Proportionality as a principle which has any bite in Eighth Amendment jurisprudence is found only in capital cases.  For example, in *Graham, supra,* the Supreme Court held life without parole was always a disproportionate sentence for a juvenile offender.  Justice Kennedy provided other examples in *Graham*:

> With respect to the nature of the offense, the Court has concluded that capital punishment is impermissible for nonhomicide crimes against individuals. *Kennedy*, 554 U.S., at 438, 128 S. Ct. 2641, 171 L. Ed. 2d 525; see also *Enmund* v. *Florida*, 458 U.S. 782, 102 S. Ct. 3368, 73 L. Ed. 2d 1140 (1982); *Coker* v. *Georgia*, 433 U.S. 584, 97 S. Ct. 2861, 53 L. Ed. 2d 982 (1977). In cases turning on the characteristics of the offender, the Court has adopted categorical rules prohibiting the death penalty for defendants who committed their crimes before the age of 18, *Roper* v. *Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), or whose intellectual functioning is in a low range, *Atkins* v. *Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002).

560 U.S. at 60-61.

In contrast, discussing application of the Eighth Amendment to non-capital cases, Justice Kennedy wrote:

> The Court's cases addressing the proportionality of sentences fall within two general classifications. The first involves challenges to the length of term-of-years sentences given all the circumstances in a particular case. The second comprises cases in which the Court implements the proportionality standard by certain categorical restrictions on the death penalty.
>
> In the first classification the Court considers all of the circumstances of the case to determine whether the sentence is unconstitutionally

_____

judges can only hope that Justice Barrett will follow Justice Scalia, for whom she clerked, in this attention to detail.

excessive. Under this approach, the Court has held unconstitutional a life without parole sentence for the defendant's seventh nonviolent felony, the crime of passing a worthless check. *Solem* v. *Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). In other cases, however, it has been difficult for the challenger to establish a lack of proportionality. A leading case is *Harmelin* v. *Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991), in which the offender was sentenced under state law to life without parole for possessing a large quantity of cocaine. A closely divided Court upheld the sentence. The controlling opinion concluded that the Eighth Amendment contains a "narrow proportionality principle," that "does not require strict proportionality between crime and sentence" but rather "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.,* at 997, 1000-1001, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (Kennedy, J., concurring in part and concurring in judgment). Again closely divided, the Court rejected a challenge to a sentence of 25 years to life for the theft of a few golf clubs under California's so-called three-strikes recidivist sentencing scheme. *Ewing* v. *California*, 538 U.S. 11, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003); see also *Lockyer* v. *Andrade*, 538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The Court has also upheld a sentence of life with the possibility of parole for a defendant's third nonviolent felony, the crime of obtaining money by false pretenses, *Rummel* v. *Estelle*, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980), and a sentence of 40 years for possession of marijuana with intent to distribute and distribution of marijuana, *Hutto* v. *Davis*, 454 U.S. 370, 102 S. Ct. 703, 70 L. Ed. 2d 556 (1982) *(per curiam)*.

The controlling opinion in *Harmelin* explained its approach for determining whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime. A court must begin by comparing the gravity of the offense and the severity of the sentence. 501 U.S., at 1005, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (opinion of Kennedy, J.). "[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. *Ibid.* If this comparative analysis "validate[s] an initial judgment that [the] sentence is grossly disproportionate," the sentence is cruel and unusual. *Ibid.*

560 U.S. at 59-60.

Distilled for purposes of this case, the Supreme Court has not struck down a non-capital

sentence as disproportionate since *Solem* in 1983. It is also impossible to distill a "holding" which can be stated as a rule from the subsequent cases. Is the rule that forty-one years for distribution of marijuana would be disproportionate? Moreover in a habeas case a District Judge cannot make his or her own *de novo* determination of how much is too much, but rather must determine whether the state courts' determination that this much is not too much is an objectively reasonable application of Supreme Court holdings.

Of course here we do not have an explicit ruling by the Twelfth District on any Eighth Amendment claim, but because Petitioner insists he fairly presented the claim, we must treat it as decided. And the Magistrate Judge does not believe the decision is unreasonable. If forty years for distribution of a relatively harmless substance like marijuana is not too much, surely twenty-eight years for incestuous child abuse cannot be too much. Thoma's Third Ground for Relief is without merit.

**Ground Four: Convictions Supported by Insufficient Evidence and Against the Manifest Weight of the Evidence**

In his Fourth Ground for Relief, Thomas asserts his convictions are against the manifest weight of the evidence and supported by insufficient evidence. Respondent's defends this claim on the merits (Return, ECF No. 10, PageID 878).

Petitioner phrases this claim in terms of both insufficient evidence and manifest weight of the evidence. However, the manifest weight argument does not state a claim under the United States Constitution and therefore cannot form a basis for habeas relief. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).

In *State v. Thompkins,* 78 Ohio St. 3d 380 (1997), the Supreme Court of Ohio reaffirmed

the important distinction between appellate review for insufficiency of the evidence and review on the claim that the conviction is against the manifest weight of the evidence. It held:

> In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, (1982), *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.)
>
> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 387. In *State v. Martin*, 20 Ohio App. 3d 172 (Hamilton Cty. 1983)(cited approvingly by the Supreme Court in *Thompkins*), Judge Robert Black contrasted the manifest weight of the evidence claim:

> In considering the claim that the conviction was against the manifest
> weight of the evidence, the test is much broader. The court,
> reviewing the entire record, weighs the evidence and all reasonable
> inferences, considers the credibility of the witnesses and determines
> whether in resolving conflicts in the evidence, the jury clearly lost
> its way and created such a manifest miscarriage of justice that the
> conviction must be reversed and a new trial ordered. …

*Martin,* 20 Ohio App. 3d 172, ¶3 of the syllabus.

Insufficiency of the evidence is a valid Fourteenth Amendment due process claim. An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the
> light most favorable to the prosecution, any rational trier of fact
> could have found the essential elements of the crime beyond a
> reasonable doubt . . . . This familiar standard gives full play to the
> responsibility of the trier of fact fairly to resolve conflicts in the
> testimony, to weigh the evidence and to draw reasonable inferences
> from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110

Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam).

> And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Although the two standards are distinct, a state court finding that the verdict is not against the manifest weight of the evidence implicitly also holds that there is sufficient evidence. *Nash v. Eberlin,* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio May 10, 2011)(White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011)(Merz, M.J.).

> While *Nash [v. Eberlin,* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007)] is not a published opinion of the Sixth Circuit and therefore not binding precedent, the Magistrate Judge will follow it and (1) not find any procedural default from Hughes' limitation of his state court argument to manifest weight, (2) liberally construe the Petition as making a claim of insufficiency of the evidence and (3) read the state court of appeals' decision that the conviction was not against the manifest weight of the evidence as "necessarily impl[ying] a finding that [Hughes'] conviction was also supported by sufficient evidence." Id. at 762. See also *State v. Lee*, 158 Ohio App. 3d 129, 2004 Ohio 3946, 814 N.E.2d 112, 115 (Ohio App. 9th Dist. 2004), cited in *Nash* at 765.

*Hughes v. Warden*, 2011 U.S. Dist. LEXIS 54131(S.D. Ohio Apr. 27, 2011), adopted, 2011 U.S. Dist. LEXIS 54132 (S.D. Ohio May 20, 2011).

The question in habeas, then, is whether the Twelfth District's decision on Thoma's insufficiency and manifest weight claims is an objectively unreasonable application of *Jackson, supra*. Thoma combined those claims in his First Assignment of Error on direct appeal which the

Twelfth District decided as follows:

### Sexual Battery

[*P25]  Appellant was convicted of sexual battery in violation of R.C. 2907.03(A)(5), which provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person." Sexual conduct includes "without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." R.C. 2907.01(A).

[*P26]  Appellant argues the state failed to present evidence of penetration "beyond H.T.'s subjective testimony, and all other objective evidence points to the opposite conclusion." He contends that because the medical records from H.T.'s sexual assault examination did not show abnormalities or injuries, "the medical report lends credibility to [his] statements that no penetration occurred."

[*P27]  However, after reviewing the record, weighing inferences and examining the credibility of the witnesses, we find that appellant's convictions for sexual battery are supported by sufficient evidence and are not against the manifest weight of the evidence. The state presented testimony and evidence proving all the essential elements of the offenses beyond a reasonable doubt. The state introduced testimony from H.T. that appellant engaged in sexual conduct by digitally penetrating her vagina in September, October, November, and December 2015, and in January, February, March, and April 2016. For all but the September 2015 offense, H.T. testified appellant entered her bedroom while she was sleeping and put his fingers into her vagina or touched her "inside her vagina." As for the September 2015 offense, H.T. explained appellant put his hands between her legs, inside her shorts and underwear, and put his fingers into her vagina while she was lying on the floor in the living room.

[*P28]  Contrary to appellant's arguments, H.T.'s testimony is sufficient, on its own, to establish the element of penetration. "'There is nothing in the law that requires that a sexual assault victim's testimony be corroborated as a condition precedent to conviction.'" *State v. Robinson*, 2015-Ohio-4533, ¶ 41, 48 N.E.3d 109, quoting

27

*State v. West*, 10th Dist. Franklin No. 06AP-111, 2006-Ohio-6259, ¶ 16. See also *State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 Ohio App. LEXIS 2245, *6 (May 28, 1996) (holding that "[e]ven without corroborating medical evidence, a victim's testimony that the perpetrator placed his penis in her vagina constitutes penetration"). Further, the medical report was not inconsistent with H.T.'s testimony. The fact that there were no injuries or abnormalities found during H.T.'s examination on April 21, 2016, does not mean that appellant did not penetrate H.T.'s vagina when he sexually assaulted her. It merely indicates that appellant's assault of the victim in the early morning hours of April 21, 2016, did not cause any lacerations or observable physical harm to H.T.'s vaginal area.

[*P29] Here, the trial court, as the trier of fact, "was in the best position to judge the credibility of witnesses and the weight to be given the evidence." *State v. Patterson*, 12th Dist. Butler No. CA2001-09-222, 2002-Ohio-5996, ¶ 12. The court was entitled to weigh H.T.'s testimony that appellant digitally penetrated her vagina against the version of events appellant testified to at trial. Though appellant denied ever penetrating H.T.'s vagina and testified that there were only three instances in which he inappropriately touched H.T., with two of those instances being accidental, appellant's April 21, 2016 statement to law enforcement indicated he had been intentionally touching H.T. inappropriately for "maybe once a week for the last couple months." Appellant's convictions are not against the manifest weight of the evidence simply because the trier of fact believed the testimony and evidence offered by the prosecution. See *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17; *State v. Erickson*, 12th Dist. Warren No. CA2014-10-131, 2015-Ohio-2086, ¶ 42.

[*P30] Accordingly, given the evidence presented at trial, we find that appellant's convictions for sexual battery are supported by sufficient evidence and are not against the weight of the evidence.

*State v. B.J.T.,* 2017-Ohio-8797 (12th Dist. Dec. 4, 2017).

**Sexual Battery**

To prevail on his claim as to the sexual battery convictions, Thoma must show that this is

an objectively unreasonable application of *Jackson, supra*.  To attempt to do so, Thoma asserts:

> The State presented no evidence of penetration beyond H.T.'s subjective testimony, and all the objective evidence points to the opposite conclusion: that Thoma did not penetrate H.T. as required to convict him of sexual battery. . . . The only objective evidence of penetration, or any physical harm, is the medical report conducted a few hours after the April 21 incident. That report showed no signs of penetration or other injury. *Id*. at ¶ 28 (noting that there were "no injuries or abnormalities found during H.T.'s examination on April 21, 2016").

(Reply, ECF No. 15, PageID 916-17).

This argument is unpersuasive.  First of all, all testimony is, of necessity, subjective.  Second there is no objective evidence at all.  The medical report gives the observations of the examiner which themselves are subjective, i.e., dependent on the observations of the reporting person.  Third, the claim that the "report showed no signs of penetration" is facially true, but it only supports Thoma's testimony that there was no penetration if we also know the likelihood that penetration would leave some observable sign.  There is no evidence in the record to that effect, either the trial record or the post-conviction record.

The substance of Thoma's argument is that a victim's testimony of penetration is insufficient for conviction.  That is not the law in Ohio, as the Twelfth District pointed out, and the federal Constitution does not require that it be the law.

Thomas argues that no reasonable person could find him guilty on the word of his daughter alone (Reply, ECF No. 15, PageID 917).  This argument fails to account for H.T.'s other testimony of surrounding facts:  the abuse virtually always happened in her bedroom and the early hours of the morning.  Thomas himself, while he doe not admit penetration, admits placing his hand in a location from which penetration would be a very simple act.  And at one point he said H.T. was not making anything up and apologizing profusely about what happened.  Why was it unreasonable for the finder of fact to credit H.T.'s testimony?

On the gross sexual imposition counts, the Twelfth District wrote:

**Gross Sexual Imposition**

[*P31]  Appellant was convicted of seven counts of GSI in violation of R.C. 2907.05(A)(5), which provides that

> [n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he ability of the other person to resist or consent * * * is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person * * * is substantially impaired because of a mental or physical condition or because of advanced age.

Sexual contact "means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, public region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). "[S]leep is a 'mental or physical condition' sufficient to substantially impair a victim's ability to resist [or consent to] * * * sexual contact within the meaning of R.C. 2907.05(A)(5)." *State v. Porter*, 9th Dist. Medina No. 12CA0061-M, 2013-Ohio-3969, ¶ 19. See also *State v. Coran*, 2d Dist. Clark No. 2014-CA-17, 2014-Ohio-4406, ¶ 6, fn. 3.

[*P32]  Appellant argues the state failed to prove the sexual arousal or gratification element of GSI, as the only evidence of sexual gratification offered by the state was H.T.'s mother's testimony that on one occasion, she woke up one night to find appellant masturbating beside her in bed. Appellant argues this testimony is "irrelevant and unrelated to [his] alleged conduct." Appellant argues that because H.T.'s mother's testimony is not linked to any specific date, "there is no evidence that this happened because of [his] actions concerning H.T."

[*P33]  "While an essential element of the offense of gross sexual imposition is that the act is for the 'purpose of sexual arousal or gratification,' there is no requirement that there be direct testimony regarding sexual arousal or gratification." *State v. English*, 12th Dist. Butler No. CA2013-03-048, 2014-Ohio-441, ¶ 69. "Whether the touching was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances of the contact." *State v. Williams*, 12th Dist. Warren No. CA2012-08-080, 2013-Ohio-3410, ¶ 33. In making this

determination, the trier of fact is "permitted to infer what the defendant's motivation was in making the physical contact with the victim." *Robinson*, 2015-Ohio-4533, ¶ 43, 48 N.E.3d 109. "If the trier of fact determines that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." *State v. Pence*, 12th Dist. Warren No. CA2012-05-045, 2013-Ohio-1388, ¶ 78.

[*P34] Contrary to appellant's arguments, we find that his convictions for GSI are supported by sufficient evidence and are not against the manifest weight of the evidence as the state presented testimony and evidence proving beyond a reasonable doubt all the essential elements of GSI, including the sexual arousal or gratification element. In addition to H.T.'s mother's testimony that she once woke up in the middle of the night to appellant masturbating, the state introduced evidence that appellant repeatedly entered H.T.'s bedroom in the middle of the night while H.T. was alone and sleeping. Dressed only in his underwear, appellant would touch H.T.'s buttocks, chest, and vagina while using a cellphone to see what he was doing. After the first time appellant assaulted H.T., he told her she "better not tell anyone that it happened," and months later, after H.T. informed appellant that she was going disclose the abuse, he begged her to remain silent. Looking at appellant's behavior and the type, nature, and circumstances surrounding the sexual contact, we find that the finder of fact could properly infer that appellant's motivation in making physical contact with H.T.'s erogenous zones was sexual arousal or gratification. The finder of fact was entitled to conclude that there was no innocent or nonsexual explanation for appellant's conduct. See *State v. Goldblum*, 2d Dist. Montgomery No. 25851, 2014-Ohio-5068, ¶ 17; State v. Wilson, 192 Ohio App.3d 189, 2011-Ohio-155, ¶ 47, 948 N.E.2d 515 (11th Dist.).

*State v. B.J.T.,* 2017-Ohio-8797.

To prevail on his claim as to the gross sexual imposition counts, Thoma must again show this decision is an objectively unreasonable application of *Jackson*. In his attempt to do so, Thoma argues the State had to show the purpose of his touchings of H.T.'s erogenous zones was sexual

gratification.  He claims he "consistently denied any sexual motive[7], and the State had no actual evidence of sexual motive during the alleged acts."

The trial judge found Thoma's denial of sexual intent unpersuasive and the Magistrate Judge agrees that finding was reasonable.  It is completely reasonable to infer from common knowledge of human behavior that a grown man who repeatedly puts his hand on the pubic region of a teenage girl and, when confronted, apologizes profusely, had a sexual intent in what he did.

In sum, the Twelfth District's conclusion that there was sufficient evidence of sexual battery and gross sexual imposition is a reasonable application of *Jackson v. Virginia.*  Thoma's Fourth Ground for Relief should be dismissed on the merits.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis.*

October 28, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

---

[7] Thoma offers no record references for these "consistent denials."  S. D. Ohio Civ. R. 7.2(b)(5) provides:  "**Pinpoint Citations.** Except for Social Security cases, which must comply with S.D. Ohio Civ. R. 8.1(d), a**ll filings in this Court that reference a prior filing must** provide pinpoint citations to the PageID number in the prior filing being referenced, along with a brief title and the docket number (ECF No. ___ or Doc. No. ___) of the document referenced." If those denials are in the record, they should have been cited.  If they are not in the record, the Court cannot consider them.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.